**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Denise M Meadville,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-08300-PCT-MTL<br><br>**ORDER** |

Plaintiff Denise Meadville challenges the Social Security Administration's ("SSA") determination that she does not qualify for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Doc. 12-3 at 17–34.) Meadville filed a Complaint with this Court seeking judicial review of that determination. (Doc. 1.) The Court has reviewed the briefs (Docs. 13–15) and the Administrative Record (Doc. 12, "AR") and now affirms the administrative law judge's ("ALJ") decision (AR at 17–34).

**I.    BACKGROUND**

On October 27, 2016, Meadville filed her application for SSI, alleging that she had been disabled since October 23, 2015. (AR at 20, 336–45.) The Commissioner denied Meadville's application initially and on reconsideration. (*Id.* at 20, 134–50, 151–68.) Meadville appeared at a hearing on December 3, 2019 before an ALJ. (*Id.* at 20, 64–116.) On March 31, 2020, the ALJ issued a written decision finding Meadville not disabled. (*Id.* at 17–34.) Meadville requested review of her claim and on September 16, 2020, the Appeals Council denied review making the ALJ's decision final and ripe for this Court's

review. (*Id.* at 1–6.) Meadville now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

In addition to this claim, Meadville previously filed for SSI, a Title II period of disability, and Disability Insurance Benefits where a favorable determination was made on April 13, 2004. (*Id.* at 20–21.) Later, on October 18, 2010, Meadville "was found no longer disabled beginning October 1, 2010." (*Id.* at 20–21.) That determination upheld on reconsideration. (*Id.* at 21.) After that, on February 20, 2013, an ALJ issued an unfavorable hearing decision regarding Meadville's disability status. (*Id.*) That ALJ decision was an administratively final decision because it was never appealed. (*Id.*)

The ALJ considered the medical opinions and records before determining Meadville's disability based on the following severe impairments: headaches (including migraine headaches and tension headaches), seizure disorder, degenerative disc disease of the cervical spine with sciatica on the right side and scoliosis, and lumbar degenerative disc disease and lumbago with sciatica on the right side. (*Id.* at 23–27.) The ALJ reviewed the entire record, including medical records and opinions and statements from Meadville and her father. (*Id.* at 23–34.) Additionally, she examined her "medically determinable mental impairments of anxiety, depression, unspecified personality disorder, and agoraphobia, considered singly and in combination," and decided that they "do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore non-severe." (*Id.* at 24; *see id.* at 24–26.) She extensively reviewed the record when making the mental health determination by considering "the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1) . . . known as the 'paragraph B' criteria." (*Id.* at 24; *see id.* at 24–26.) She determined that Meadville's medically determinable mental impairments are nonsevere because they "cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (*Id.* at 25.)

After that, the ALJ determined that Meadville "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)" before calculating her residual functional capacity ("RFC"). (*Id.* at 28–32.) She determined that Meadville had the RFC "to perform medium work as defined in 20 CFR 416.967(c) except as follows: In an eight-hour workday with normal breaks, she can occasionally lift and/or carry up to 50 pounds and frequently up to 25 pounds, and she can stand or walk for a total of about six hours, and sit for a total of about six hours. In addition, she can occasionally climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to noise above office level and hazards like unprotected heights and moving dangerous machinery." (*Id.* at 28; *see id.* at 28–32.) This RFC determination involved reviewing and analyzing differing pieces of medical and opinion evidence. (*Id.* at 28–32.) Although Meadville had no past relevant work, given her RFC, the ALJ determined that there exist a significant number of jobs "in the national economy that [Meadville] can perform." (*Id.* at 33.) And so, she found that Meadville was "not disabled" for the relevant period. (*Id.* at 34.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1119 n.11 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

### III. DISCUSSION

Meadville raises four arguments on appeal. First, the 2013 ALJ findings as to her light RFC are *res judicata* and should have been adopted by the ALJ here. (Doc. 13 at 7–9; Doc. 15 at 4–5.) Second, the ALJ failed to properly analyze her treating physician's medical opinion. (Doc. 13 at 4–7; Doc. 15 at 2–3.) Third, the ALJ improperly evaluated her and her father's subjective statements. (Doc. 13 at 9–19; Doc. 15 at 2–3.) Fourth, the ALJ's RFC determination was not supported by substantial evidence. (Doc. 13 at 20–24; Doc. 15 at 2–3.)

#### A. *Res Judicata*

Applications for disability benefits with a non-disability finding through the date of the prior decision that are left unappealed are *res judicata* as to subsequent similar disability claims. This principle holds true for administrative decisions, but is less rigidly applied in such cases as compared to judicial proceedings. *See Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). These binding determinations of non-disability create a presumption of continuing non-disability for dates after the decision. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995) (amended April 9, 1996); *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985).

But this presumption may be overcome if there are "changed circumstances." *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Changed circumstances may include instances where an inadequate record was created due to the claimant's unrepresented status or a previously unlitigated impairment or other apparent error in the prior determination is established by new facts. *See Lester*, 81 F.3d at 827–28; *see also Vasquez*, 572 F.3d at 597–98. For example, in *Gregory*, the Ninth Circuit held that the applicant's claim could not be barred by *res judicata* because she raised a new impairment that the previous ALJ had not considered and, in her first application, she was an unrepresented party. 844 F.2d at 666.

Meadville argues that the 2013 ALJ findings that she had a light RFC is *res*

*judicata* and that there was no change in circumstances between this case and her case in 2013. (*See* Doc. 13 at 7–9.) The Commissioner disagrees arguing that there is "new and material evidence" in this case. (Doc. 14 at 16; *see id.* at 16–17.) For example, Meadville's latest medical records regarding her back pain and the updated images of her back from 2019 show that her condition had improved—she suffered from minimal back pain. (*Id.* at 16–17; AR 732, 733.) Meadville counters that even if "there is evidence of a new impairment and worsening symptoms," such a finding would be contrary to the ALJ's decision here which found Meadville was *less* disabled than the 2013 decision. (Doc. 15 at 4–5.) The Court agrees with the Commissioner.

Meadville's arguments are partially correct. The Ninth Circuit did hold in *Chavez* that a prior ALJ's finding of nondisability is *res judicata*, as well as holding that "findings concerning the claimant's [RFC] . . . are entitled to some res judicata consideration in subsequent proceedings." 844 F.2d at 694. But Meadville overlooks the Social Security Administration's further guidance. As explained in Acquiescence Ruling 97-4(9), adjudicators need not adopt an RFC finding from an earlier final decision if "there is new and material evidence relating to such a finding." AR 97-4(9), 1997 WL 742758 (S.S.A. Dec. 3, 1997); *see id.* at *3.

This case presented new and material evidence relating to Meadville's RFC determination. New evidence regarding Meadville's alleged back impairment, back pain, range of motion, use of an assistive device, and ability to walk populate the record.[1] This stands in sharp contrast to the 2013 decision which presented little to no evidence on these issues. (AR at 122–28.) Of particular note is her back impairment which is barely discussed in the 2013 decision. (*Id.*) Collectively, this evidence constitutes new and material evidence relating to Meadville's RFC. Moreover, generally, the record in this case points towards no disabling back pain, limited use of assistive devices, a normal gait, and a full range of motion.[2] This new evidence regarding Meadville's back condition is a significant change in circumstances such that the 2013 decision and the

---

[1] (*See, e.g.*, AR at 146, 164, 621, 636, 646–47, 693–99, 726–33, 767, 806, 847.)
[2] *Id.*

RFC determination made in 2013 should not be given *res judicata* effect. Circumstances changed; it is not unexpected that her level of disability improved. Therefore, the ALJ properly found that a change in circumstances occurred between the 2013 ALJ decision and the most current decision. She correctly determined that the 2013 ALJ's RFC and nondisability determinations were not *res judicata*.

### B. Medical Opinion Evidence

Although an ALJ must consider all the medical evidence in the record, medical opinion sources are separated into three types: (1) treating physicians (who treat a claimant), (2) examining physicians (who examine but do not treat a claimant), and (3) non-examining physicians (who do not examine or treat a claimant). *Lester*, 81 F.3d at 830 (superseded by statute on other grounds). For disability benefit applications filed prior to March 27, 2017, treating medical sources are generally given more weight than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ must consider several factors—including the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors—in deciding how to weigh the source's opinion. 20 C.F.R. § 404.1527(c). The ALJ must thereafter provide an explanation for the weight given to each medical source. 20 C.F.R. § 404.1527(f)(2). If certain evidence contradicts a treating physician's opinion, the ALJ must provide "specific and legitimate reasons supported by substantial evidence" for rejecting that physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830) (internal citation marks omitted).

Despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Meadville argues that the ALJ erred by not giving Dr. Zegarra's medical opinion great weight. (Doc. 13 at 4, 6.) She argues this was error, in part, because the ALJ relied on only one doctor's opinion that conflicted with Dr. Zegarra's opinion when making that decision. (*Id.*) That opinion was from Dr. Curtis, who had seen Meadville only once. (*Id.*) Meadville asserts that the ALJ's decision to discount Dr. Zegarra's opinion with Dr. Curtis' opinion is illogical because the ALJ gave substantial weight to Dr. Curtis' opinion while also finding that Dr. Curtis' opinion was wrong. (*Id.* at 4–5.) Meadville also argues that the ALJ's additional reasons for not affording Dr. Zegarra's opinion great weight— that he only saw the patient three times a year, that "he allegedly neglected to review the records of other doctors to whom he had referred his patient, and . . . [that he] did not recite each and every one of her alleged impairments"—warrant a remand. (*Id.* at 6.)

The Commissioner argues that substantial evidence supports the ALJ's decision to afford Dr. Zegarra's opinion less weight. (*See* Doc. 14 at 7–11.) First, the Commissioner highlights that the record was inconsistent with Zegarra's opinion. (*Id.* at 7–10.) The Commissioner asserts that the opinions of Dr. Griffin and Dr. Sampat, which indicated "mild to moderate findings regarding [Meadville's] back impairment," were more consistent with the record. (*Id.* at 8; *see id.* at 7–10.) Additionally, the Commissioner asserts, Dr. Curtis' opinion was consistent with the record and Dr. Griffin's and Dr. Sampat's opinions. (*Id.* at 8–9.) These three opinions came to different conclusions than Dr. Zegarra. (*See id.* at 7–11.) Second, the Commissioner notes that Dr. Zegarra's

opinion was inconsistent with his own treatment notes. (*See id.* at 10–11.) Thus, on balance, the Commissioner argues that there was substantial evidence to support the ALJ's assessment of Zegarra's opinion. (*Id.* at 7–11.)

Meadville counters that Dr. Zegarra's opinion is supported by the record and that the Commissioner's arguments fail to address the same supporting evidence that the ALJ's opinion overlooks, namely, the "medical treatment history, findings, assessments, diagnoses, and opinions of three treating . . . [n]eurologists." (Doc. 15 at 2.) She argues that "the ALJ could not have given clear and convincing reasons to discredit Dr. Zegarra's opinions . . .without ever mentioning the findings and opinions of the" three neurologists who treated Meadville. (*Id.* at 3.)

To that point, the ALJ's opinion lacks any analysis or consideration of the medical opinions of neurologists Dr. Nimfa Aguila, Dr. Munawar Paracha, and Dr. Ronald Bennett. In 2015, Dr. Aguila assessed Meadville's migraines, observed Meadville's chronic radicular pain, and noted Meadville's mild bilateral sensory compromise of bilateral median nerves at the wrists on an electrodiagnostic medicine report. (AR at 480–82.) Following her visit, Dr. Aguila prescribed Meadville Injectable Imitrex for use at the onset of acute headaches. (*Id.*) Dr. Paracha also observed and treated Meadville for migraine headaches. (*See* AR at 693–99.) Dr. Bennett's opinion indicates that Meadville could be suffering from a seizure disorder based on the electroencephalogram performed. (AR at 726–31.) These observations and treatments are consistent with Dr. Zegarra's medical opinion, bolstering its reliability. (*See* AR at 480–82, 693–99, 726–31, 1228–34.) Thus, all three doctors' opinions are incredibly relevant pieces of evidence in the record for determining the weight Zegarra's opinion should be assigned. To issue an opinion without considering any of these three opinions is error.

This error alone is grounds for remand, meaning the ALJ would need to perform additional administrative proceedings after properly considering the record when determining the weight to assign Dr. Zegarra's medical opinion. Additional administrative proceedings would substantially change the record regarding the ALJ's

RFC determination and the ALJ's analysis of Meadville's and her father's subjective statements. Thus, the Court refrains from commenting on the other arguments the parties' briefs presented on both of those issues as, after the record is further developed, the Court's findings would not be relevant.

## IV.     CREDIT-AS-TRUE RULE

After determining that the ALJ made an error sufficiently serious to warrant a remand, the Court decides whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an award of benefits rather than remand the case for additional evidence. *Treichler*, 775 F.3d at 1101–02. Whether the credit-as-true rule is mandatory or discretionary in the Ninth Circuit is unclear because Ninth Circuit jurisprudence is split on the issue. *Compare Vasquez*, 572 F.3d at 593–94, *and Garrison v. Colvin*, 759 F.3d 995, 1019–23 (9th Cir. 2014), *with Treichler*, 775 F.3d at 1099–02. The rule can only be applied when three elements are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even then, the rule is rarely applied because the decision to remand or apply the rule is discretionary and courts "frequently exercise[] [their] discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102.

Here, the credit-as-true rule does not apply. Even if Dr. Zegarra's medical opinion regarding Meadville's limitations were credited as true, the ALJ would not be required to find the claimant disabled on remand. Dr. Zegarra's testimony is just one piece of an extensive record that the ALJ needs to consider. For example, the ALJ would still need to consider Meadville's and her father's subjective testimony. Just because Dr. Zegarra's testimony is true does not mean that the ALJ has to weigh Meadville's or her father's subjective testimony any or more or less than she did before. Moreover, the record would

still contain conflicting medical opinions, many of them treating opinions, by a variety of doctors. As previously noted, this could affect the ALJ's RFC determination, but it does not necessitate a finding that Meadville is disabled. Thus, further administrative proceedings would be useful to determine the amount of benefits to which Meadville is entitled. And so, the Court finds that applying the credit-as-true rule is not justified in this case. Therefore, a remand for further administrative proceedings to develop the record is necessary.

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED remanding** this matter to the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 3rd day of March, 2022.

Michael T. Liburdi
United States District Judge